No. 19-4550 (L)

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**UNITED STATES OF AMERICA**,

*Appellee,*

**v.**

**MICHAEL MISELIS, et al.,**

*Appellants.*

On Appeal from the United States District Court
for the Western District of Virginia
Charlottesville Division (Hon. Norman K. Moon)

**SUPPLEMENTAL JOINT APPENDIX**
**Pages 1 - 46**
**VOLUME I of II**

**JUVAL O. SCOTT**
Federal Public Defender
for the Western District of Virginia

**LISA M. LORISH**
Assistant Federal Public Defender
401 E. Market Street, Suite 106
Charlottesville, VA  22902
(434) 220-3380
*Counsel for Appellant Daley*

**RAYMOND C. TARLTON**
TARLTON | POLK PLLC
3905 Haworth Drive, Suite 207 (27609)
PO Box 1386 (27602)
Raleigh, NC
(919) 948-6464
*Counsel for Appellant Miselis*

**THOMAS T. CULLEN**
United States Attorney
for the Western District of Virginia

**LAURA D. ROTTENBORN**
Assistant United States Attorney
P.O. Box 1709
Roanoke, VA 24008
(540) 857-2250
*Counsel for Appellee*

# **<u>TABLE OF CONTENTS</u>**

Volume I of II

SJA Page

Transcript of Guilty Plea Hearing (Michael Miselis)
Held Before the Honorable Norman K. Moon
(May 3, 2019)..................................................................................................... 1

Transcript of Guilty Plea Hearing (Benjamin Daley)
Held Before the Honorable Norman K. Moon
(May 3, 2019)..................................................................................................... 17

Daley Motion for Appeal Bond
(July 15, 2019) ................................................................................................... 33

Miselis Motion for Appeal Bond
(July 18, 2019) ................................................................................................... 44

i

```
 1                    IN THE UNITED STATES DISTRICT COURT
                       WESTERN DISTRICT OF VIRGINIA
 2                        CHARLOTTESVILLE DIVISION


 3
        *****************************************************************
 4      UNITED STATES OF AMERICA,

 5              Plaintiff,           CRIMINAL CASE NO.: 3:18-CR-25-2
                                     May 3, 2019
 6                                   Charlottesville, Virginia
                                     Guilty Plea Hearing
 7      -v-

 8      MICHAEL PAUL MISELIS,        Before:
                                     THE HONORABLE NORMAN K. MOON
 9                                   UNITED STATES DISTRICT JUDGE
                Defendant.           WESTERN DISTRICT OF VIRGINIA
10
        *****************************************************************
11

12      APPEARANCES:

13      For the Government:

14          CHRISTOPHER ROBERT KAVANAUGH, ESQUIRE
            United States Attorneys Office
15          255 West Main Street, Room 130
            Charlottesville, Virginia  22902
16          434-293-4283
            christopher.kavanaugh@usdoj.gov
17
            THOMAS T. CULLEN, ESQUITE
18          United States Attorneys Office
            310 First Street, SW, Suite 906
19          Roanoke, Virginia  24011
            540-857-2901
20          thomas.cullen@usdoj.gov

21
        _____
22
                         Mary J. Butenschoen, RPR, CRR
23                       Federal Official Court Reporter
                              Roanoke, Virginia
24
        PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY; TRANSCRIPT
25      PRODUCED BY COMPUTER.
```

```
 1    APPEARANCES (Continued):

 2    For the Defendant:

 3          WARREN EUGENE COX, ESQUIRE
            CoxFedLaw, LLC
 4          422 1st Street
            Shenandoah, Virginia  22849
 5          540-742-5385
            genecox@coxfedlaw.com
 6    ///

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1    (Proceedings commenced 10:00 a.m.)

 2           THE COURT:  Good morning.  Call the case, please.

 3           THE CLERK:  Yes, Your Honor.  This is Criminal

 4    Action Number 3:18-cr-25, United States of America v. Michael

 5    Paul Miselis, Defendant Number 2.

 6           THE COURT:  Government ready?

 7           MR. KAVANAUGH:  Yes, we are, Your Honor.

 8           THE COURT:  Defendant ready?

 9           MR. COX:  Yes, Your Honor.

10           THE COURT:  All right.  I'll ask your defendant to

11    stand and be sworn.

12           THE CLERK:  Please raise your right hand.

13                MICHAEL PAUL MISELIS, SWORN

14           THE COURT:  Will you state your full name, please?

15           Remaining standing and please state your full name.

16    State your full name.

17           THE DEFENDANT:  Oh, sorry.  Michael Miselis.

18           THE COURT:  And the date of your birth?

19           THE DEFENDANT:  October 13, 1988.

20           THE COURT:  And how far did you go in school?

21           THE DEFENDANT:  The seventh year of my Ph.D.

22    program.

23           THE COURT:  Are you able to read and understand

24    English?

25           THE DEFENDANT:  Yes.
```

```
1              THE COURT:  Are you currently or have you recently
2     been under the care of a physician or a psychiatrist?
3              THE DEFENDANT:  No, Your Honor.
4              THE COURT:  Have you been hospitalized or treated
5     for narcotic addiction?
6              THE DEFENDANT:  No, Your Honor.
7              THE COURT:  Are you presently under the influence of
8     any drug or medication or alcoholic beverage of any kind?
9              THE DEFENDANT:  No, Your Honor.
10             THE COURT:  And how do you feel physically today?
11             THE DEFENDANT:  Well, Your Honor.
12             THE COURT:  All right.  Have you received a copy of
13    the indictment?
14             THE DEFENDANT:  Yes, Your Honor.
15             THE COURT:  And have you had ample time to consult
16    with your attorney?
17             THE DEFENDANT:  Yes, Your Honor.
18             THE COURT:  Do you want the indictment read or will
19    you waive its reading?
20             THE DEFENDANT:  I'll waive it, Your Honor.
21             THE COURT:  And how do you plead to the charge?
22             THE DEFENDANT:  Guilty, Your Honor.
23             THE COURT:  All right.  I find the defendant is
24    competent to plead, but before accepting your guilty plea
25    there are a number of questions I will ask you to assure that
```

1    the plea is valid.  If you do not understand any of the

2    questions or if at any time you wish to consult with your

3    attorney, say so because it is essential that you understand

4    each question before you answer.

5            First, do you understand that you're now under oath

6    and if you answer any of my questions falsely your answers may

7    later be used against you in another prosecution for perjury

8    or making a false statement?

9            THE DEFENDANT:  I understand.

10           THE COURT:  I'm sorry, I didn't hear you.

11           THE DEFENDANT:  I understand, Your Honor.

12           THE COURT:  Okay.  Are you fully satisfied with the

13   counsel, representation, and advice given you in this case by

14   your attorney?

15           THE DEFENDANT:  Yes, Your Honor.

16           THE COURT:  And do you understand that under the

17   constitution and laws for the United States you are entitled

18   to a trial by jury on the charges contained in the indictment?

19           THE DEFENDANT:  Yes, Your Honor.

20           THE COURT:  Do you understand at that trial you

21   would be presumed to be innocent and the government would be

22   required to prove you guilty by competent evidence and beyond

23   a reasonable doubt, and you would not have to prove that you

24   were innocent?

25           THE DEFENDANT:  Yes, Your Honor.

1           THE COURT:  And do you understand that in the course

2    of the trial the witnesses for the government would have to

3    come to court and testify in your presence, your counsel could

4    cross-examine those witnesses, object to evidence offered by

5    the government, and offer evidence on your behalf?

6           THE DEFENDANT:  Yes, Your Honor.

7           THE COURT:  And do you understand that while you

8    would have the right to testify, if you chose to do so, you

9    would also have the right not to testify, and no inference or

10   suggestion of guilt could be drawn from the fact you did not

11   testify?

12          THE DEFENDANT:  Yes, Your Honor.

13          THE COURT:  If you plead guilty and I accept your

14   plea, do you understand you will waive your right to a trial

15   and the other rights I've just discussed, there will be no

16   trial, and I will enter a judgment of guilty and sentence you

17   on the basis of your guilty plea after considering a

18   presentence report?

19          THE DEFENDANT:  Yes, Your Honor.

20          THE COURT:  You may have a seat, and I'm going to

21   ask the Assistant United States Attorney to summarize the

22   elements the government must prove beyond a reasonable doubt

23   and also state what the punishment is for such cases.

24          MR. KAVANAUGH:  Good morning, Your Honor.  As far as

25   the maximum penalty that the defendant is facing for a plea of

1   guilty in this case, the maximum penalty for a plea to 18

2   U.S.C. 371, which is what is charged in Count One and the

3   Count One to which the defendant is pleading guilty, is a fine

4   of up to $250,000, a maximum five-year term of imprisonment, a

5   $100 mandatory special assessment, and three years of

6   supervised release.

7        The elements of a violation of 18 U.S.C. 371, that

8   is, conspiracy, has two elements:

9        The first is that the defendant agreed with at least

10  one other person to engage in -- reached an agreement which

11  had an unlawful objective.  In this case, that unlawful

12  objective would be to engage in conduct that violated 18

13  U.S.C. 2101, or the federal riot statute.

14       The second element of 371 is that at some point in

15  time after reaching that agreement and during the course of

16  the conspiracy, that the defendant or one of his

17  co-conspirators made at least one overt act in furtherance of

18  achieving that objective.

19       The elements of 18 U.S.C. 2101 are also twofold:

20       The first is that a person traveled in interstate

21  commerce or used a facility of interstate commerce with intent

22  to incite a riot, organize, promote, encourage, participate

23  in, or carry on in a riot, commit any act of violence in

24  furtherance of a riot, or to aid and abet any person in

25  inciting or participating or carrying on in a riot, or

1    committing any act of violence in furtherance of a riot.

2              The second element is that during the course of such

3    travel or use of facility of interstate commerce, or at some

4    point thereafter, performs or attempts to perform any overt

5    act for one of those four purposes, as just mentioned, as well

6    as provided under the statute.

7              THE COURT:  All right, thank you.  If you would

8    stand again, please.

9              Do you understand what the government must prove

10   beyond a reasonable doubt before you could be found guilty?

11             THE DEFENDANT:  Yes, Your Honor.

12             THE COURT:  And do you understand the range of

13   punishment provided by law for such cases?

14             THE DEFENDANT:  Yes, Your Honor.

15             THE COURT:  Do you understand that the Court will

16   impose a special assessment of $100?

17             THE DEFENDANT:  Yes, Your Honor.

18             THE COURT:  Have you and your attorney talked about

19   how the Sentencing Commission Guidelines might apply to your

20   case?

21             THE DEFENDANT:  Yes, I believe so.

22             THE COURT:  Do you understand that the Court will

23   not be able to determine the sentence for your case until

24   after a presentence report has been completed and you and the

25   government have had an opportunity to challenge the facts

 1    reported by the probation officer?

 2              THE DEFENDANT:  Yes, Your Honor.

 3              THE COURT:  Do you understand that the judge has the

 4    authority to impose a sentence that is more severe or less

 5    severe than the sentence called for by the guidelines provided

 6    the judge acts in accordance with the law and the evidence in

 7    your case?

 8              THE DEFENDANT:  Yes, Your Honor.

 9              THE COURT:  And do you understand that parole has

10    been abolished and if you are sentenced to prison you will not

11    be released on parole?

12              THE DEFENDANT:  Yes, Your Honor.

13              THE COURT:  And do you understand that if the

14    sentence is more severe than you expected you will still be

15    bound by your plea and have no right to withdraw it?

16              THE DEFENDANT:  Yes, Your Honor.

17              THE COURT:  All right.  There has been a plea

18    agreement, I take it?

19              MR. COX:  Yes, Your Honor.

20              THE COURT:  You may have a seat, and I'll ask

21    counsel to summarize the plea agreement.

22              MR. COX:  Good morning, Your Honor.

23              Mr. Miselis has agreed to plead guilty to Count One

24    of the indictment, and in exchange the government has agreed

25    to dismiss Count Two of the indictment.  And also in regard to

```
1    the sentencing guidelines the government -- if Mr. Miselis
2    complies with these obligations, the government will recommend
3    the Court grant a two-level reduction in the offense level and
4    then a one-level reduction in offense level for the guidelines
5    calculation.
6            And also, Your Honor, the government is allowing
7    Mr. Miselis to not waive his right to appeal the issue as to
8    whether 18 U.S.C. 2101 is unconstitutional.
9            And I believe that's the entire plea agreement, Your
10   Honor.
11           THE COURT:  He is waiving the right to appeal the
12   sentence and the -- everything except the constitutionality
13   question.
14           MR. COX:  That's right, Your Honor.
15           THE COURT:  And also the other things that are in
16   the plea agreement that --
17           MR. COX:  Yes, Your Honor.
18           THE COURT:  Ineffective assistance and --
19           MR. COX:  Yes, Your Honor.
20           THE COURT:  All right.  Would you stand again,
21   please.
22           I'm sorry.  Does the government have anything to
23   add?
24           MR. KAVANAUGH:  Thank you, Your Honor.  Just one --
25   two other things, is that the plea agreement does provide for
```

1    the agreement to certain guideline provisions, the aggravated

2    assault guideline, and enhancements for more than minimal

3    planning, as well as one for bodily injury.

4            The parties are free and understand that there may

5    be additional guideline provisions that apply, and they will

6    be free to argue those at sentencing.

7            And then last and finally is that there is a

8    completion of prosecution provision that is in the agreement

9    in which the government -- in this case represented by the

10   Western District of Virginia and the Central District of

11   California -- agree not to prosecute Mr. Miselis for any

12   additional violations of 18 U.S.C. 2101 for the conduct

13   included in the statement of offense, which is attached to the

14   plea agreement and is going to be tendered to the Court.

15           THE COURT:  All right, thank you.

16           Did you read and understand the agreement before you

17   signed it?

18           THE DEFENDANT:  Yes, Your Honor.

19           THE COURT:  And you have heard it discussed here in

20   the courtroom.  Did your counsel or the Assistant United

21   States Attorney say anything about the agreement that's

22   different from your understanding of the agreement?

23           THE DEFENDANT:  No, Your Honor.

24           THE COURT:  All right.  Other than the agreement,

25   has anyone made any promise or assurance to you in an effort

1    to induce you to plead guilty?

2              THE DEFENDANT:  No, Your Honor.

3              THE COURT:  Has anyone attempted to force you to

4    plead guilty?

5              THE DEFENDANT:  No, Your Honor.

6              THE COURT:  All right.  With the exception of having

7    the right to appeal, the constitutional question in this case

8    and anything that's in the plea agreement, are you voluntarily

9    giving up your right to appeal the guilty verdict and sentence

10   in the case?

11             THE DEFENDANT:  Yes, Your Honor.

12             THE COURT:  All right.  And are you voluntarily

13   giving up your right to collaterally attack the judgment as

14   set forth in the plea agreement?

15             THE DEFENDANT:  Yes, Your Honor.

16             THE COURT:  Okay.  You may have a seat.  And I'll

17   ask the government to proffer its evidence.

18             MR. KAVANAUGH:  Your Honor, attached to the plea

19   agreement is a six-page document that is titled The Statement

20   of Offense.  It is six pages and at the end has a -- bears the

21   signature of Mr. Miselis, his counsel, as well as the counsel

22   for the government in this case represented by myself as well

23   as Mr. Cullen.

24             We tender that as far as being the Statement of

25   Offense at what the evidence would prove if this went to trial

```
 1    rather than read it word-for-word here in open court if that
 2    is preferred by the Court.
 3              THE COURT:  Okay.  The defendant agrees that the
 4    statement is what you-all have agreed to the facts are?
 5              MR. COX:  Yes, Your Honor.
 6              THE COURT:  All right.  Thank you.
 7              Would you stand again then, please.
 8              How do you plead to the charge, guilty or not
 9    guilty?
10              THE DEFENDANT:  Guilty.
11              THE COURT:  All right.  It's the finding of the
12    court the defendant is fully competent and capable of entering
13    an informed plea and that his plea of guilty is a knowing and
14    voluntary plea supported by an independent basis in fact
15    containing each of the essential elements of the offense.  His
16    plea is, therefore, accepted and he's now adjudged guilty of
17    that offense, which is Count One, I believe.
18              MR. COX:  That's correct.
19              MR. KAVANAUGH:  That is correct, Your Honor.
20              THE COURT:  I will order a presentence report, and
21    it is in your best interest to cooperate with the probation
22    officer in furnishing information for that report because it
23    will be important in my decision as to what your sentence will
24    be.  Your attorney may be present during any interview if you
25    so desire.  You and your counsel have a right and will have an
```

```
 1    opportunity to review the report before the sentencing
 2    hearing.  You will also have an opportunity to comment on the
 3    report at the time of the hearing.  You and your counsel will
 4    have an opportunity to speak on your behalf at the sentencing
 5    hearing.
 6              You may have a seat.  I'll ask the clerk to read the
 7    guilty plea form, and it will be brought to you for execution.
 8              THE CLERK:  This is Criminal Action Number
 9    3:18-cr-25, United States of America v. Michael Paul Miselis,
10    Defendant Number 2.
11              In the presence of Warren Cox, my counsel, who has
12    fully explained the charges contained in the indictment
13    against me, and having received a copy of the indictment from
14    the United States Attorney before being called upon to plead,
15    I hereby plead guilty to said indictment and Count One
16    thereof.  I have been advised of the maximum punishment which
17    may be imposed by the Court for this offense.  My plea of
18    guilty is made knowingly and voluntarily and without threat of
19    any kind or without promises other than those disclosed here
20    in open court.
21              Is this correct?
22              THE DEFENDANT:  Yes.
23              THE CLERK:  The attorney needs to sign it.
24              The guilty plea form has been executed, Your
25    Honor.
```

```
 1              THE COURT:  All right.  Do you have a date for
 2      sentencing?
 3              THE CLERK:  July 19, Your Honor.  Would you-all like
 4      10:30 or 11?
 5              MR. COX:  I think we said July 17.
 6              THE CLERK:  19th.
 7              MR. COX:  19th, okay.
 8              MR. KAVANAUGH:  10:30 is fine.
 9              MR. COX:  10:30 is fine.
10              THE CLERK:  10:30.
11              THE COURT:  Okay.  Is that all in this case?
12              MR. KAVANAUGH:  Your Honor, the Court's indulgence.
13              Your Honor, we also would tender the signed plea
14      agreement that governs this case as well as the signed
15      statement of offense, if I may provide those to Madam Clerk.
16              THE COURT:  All right, thank you.
17              THE CLERK:  Thank you.
18              THE COURT:  All right.  If there's nothing else, I
19      think counsel is here in the next case.  Are you-all ready?
20      As soon as the next can be brought up, we'll proceed.
21      (The proceedings concluded at 10:17 a.m.)
22      ///
23
24
25
```

1                          **CERTIFICATE**

2              I, Mary J. Butenschoen, certify that the foregoing

3     is a correct transcript from the record of proceedings in the

4     above-entitled matter.

5     /S/ Mary J. Butenschoen, RPR, CRR                  1/9/2020

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1              IN THE UNITED STATES DISTRICT COURT
                WESTERN DISTRICT OF VIRGINIA
 2                 CHARLOTTESVILLE DIVISION


 3      ************************************************************

 4   UNITED STATES OF AMERICA,

 5            Plaintiff,          CRIMINAL CASE NO.: 3:18-CR-25-1
                                  May 3, 2019
 6                                Charlottesville, Virginia
                                  Guilty Plea Hearing
 7   -v-

 8   BENJAMIN DRAKE DALEY,        Before:
                                  THE HONORABLE NORMAN K. MOON
 9                                UNITED STATES DISTRICT JUDGE
              Defendant.          WESTERN DISTRICT OF VIRGINIA
10
        ************************************************************
11   APPEARANCES:

12   For the Government:

13        CHRISTOPHER ROBERT KAVANAUGH, ESQUIRE
          United States Attorneys Office
14        255 West Main Street, Room 130
          Charlottesville, Virginia  22902
15        434-293-4283
          christopher.kavanaugh@usdoj.gov
16
          THOMAS T. CULLEN, ESQUIRE
17        United States Attorneys Office
          310 First Street, SW, Suite 906
18        Roanoke, Virginia  24011
          540-857-2901
19        thomas.cullen@usdoj.gov

20

21   _____

22                Mary J. Butenschoen, RPR, CRR
                  Federal Official Court Reporter
23                     Roanoke, Virginia

24   PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY; TRANSCRIPT
     PRODUCED BY COMPUTER.
25
```

```
 1    APPEARANCES (Continued):

 2         LISA M. LORISH, ESQUIRE
           Federal Public Defenders Office
 3         Western District of Virginia - Charlottesville
           401 E. Market Street, Suite 106
 4         Charlottesville, Virginia  22902
           434-220-3388
 5         lisa_lorish@fd.org

 6    ///

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1    (Proceedings commenced 10:19 a.m.)
 2             THE COURT:  If you would call the case.
 3             THE CLERK:  Yes, Your Honor.  This is Criminal
 4    Action Number 3:18-CR-25, United States of America v. Benjamin
 5    Drake Daley, Defendant Number 1.
 6             THE COURT:  Government ready?
 7             MR. KAVANAUGH:  Yes, Your Honor.
 8             THE COURT:  Defendant ready?
 9             MS. LORISH:  Yes, Your Honor.
10             THE COURT:  I'll ask the defendant to stand and be
11    sworn.
12             THE CLERK:  Please raise your right hand.
13                  BENJAMIN DRAKE DALEY, SWORN
14             THE COURT:  State your full name, please.
15             THE DEFENDANT:  Ben Daley.
16             THE COURT:  And the date of your birth?
17             THE DEFENDANT:  12/14/1992.
18             THE COURT:  And how far did you go in school?
19             THE DEFENDANT:  I graduated high school.
20             THE COURT:  Are you able to read and understand
21    English?
22             THE DEFENDANT:  Yes.
23             THE COURT:  Are you currently or have you recently
24    been under the care of a physician or a psychiatrist?
25             THE DEFENDANT:  One more time?
```

```
 1              THE COURT:  Have you been under the care --
 2    recently, have you been under the care of a physician or a
 3    psychiatrist?
 4              THE DEFENDANT:  No.
 5              THE COURT:  Have you been hospitalized or treated
 6    for narcotic addiction?
 7              THE DEFENDANT:  No.
 8              THE COURT:  Are you presently under the influence of
 9    any drug or medication or alcoholic beverage of any kind?
10              THE DEFENDANT:  No.
11              THE COURT:  And how do you feel physically today?
12              THE DEFENDANT:  Good.
13              THE COURT:  Have you received a copy of the
14    indictment?
15              THE DEFENDANT:  I have.
16              THE COURT:  Have you had ample time to consult with
17    your attorney?
18              THE DEFENDANT:  Yes.
19              THE COURT:  Do you -- do you want the indictment
20    read or will you waive its reading?
21              MS. LORISH:  We'll waive the reading, Your Honor.
22              THE COURT:  Okay.  And how do you plead to the
23    charge?  Count One, I think it is.
24              THE DEFENDANT:  Guilty.
25              THE COURT:  I find the defendant is competent to
```

1   plead, but before accepting your guilty plea there are a

2   number of questions I will ask you to ensure that the plea is

3   valid.  If you do not understand any of the questions or if at

4   any time you wish to consult with your attorney, say so

5   because it is essential that you understand each question

6   before you answer.

7           First, do you understand that you are now under

8   oath, and if you answer any of my questions falsely the

9   answers may later be used against you in another prosecution

10  for perjury or making a false statement?

11          THE DEFENDANT:  I do.

12          THE COURT:  Are you fully satisfied with counsel,

13  representation and advice given you in this case by your

14  attorney?

15          THE DEFENDANT:  I am.

16          THE COURT:  Do you understand that under the

17  constitution and laws of the United States you are entitled to

18  a trial by jury on the charges contained in the indictment?

19          THE DEFENDANT:  I do.

20          THE COURT:  And do you understand that at trial you

21  would be presumed to be innocent and the government would have

22  to prove you guilty by competent evidence and beyond a

23  reasonable doubt and you would not have to prove that you were

24  innocent?

25          THE DEFENDANT:  Yes.

1              THE COURT:  And do you understand that in the course

2       of the trial the witnesses for the government would have to

3       come to court and testify in your presence, your counsel could

4       cross-examine those witnesses, object to evidence offered by

5       the government, and offer evidence on your behalf?

6              THE DEFENDANT:  Yes.

7              THE COURT:  And do you understand also that at trial

8       you would have the right to testify if you chose to do so, but

9       you also have the right not to testify, and no inference or

10      suggestion of guilt could be drawn from the fact you did not

11      testify?

12             THE DEFENDANT:  Yes.

13             THE COURT:  If you plead guilty and I accept your

14      plea, do you understand that you will waive your right to a

15      trial and the other rights I've just discussed, there will be

16      no trial, and I will enter a judgment of guilty and sentence

17      you on the basis of your guilty plea after considering a

18      presentence report?

19             THE DEFENDANT:  Yes.

20             THE COURT:  Do you still want to plead guilty?

21             THE DEFENDANT:  Yes.

22             THE COURT:  All right.  You may have a seat, and

23      I'll ask the Assistant United States Attorney to summarize the

24      elements the government must prove, as well as the range of

25      punishment provided for such cases.

1          MR. KAVANAUGH:  Your Honor, the maximum penalties

2   for a violation of 18 U.S.C. 371, which is the crime of

3   conspiracy that is charged in Count One, is a term of

4   imprisonment of up to five years, a maximum fine of up to

5   $250,000, three years of supervised release, and a $100

6   mandatory special assessment.

7              The elements of the crime of conspiracy are twofold.

8              First, is that the defendant agreed with at least

9   one other person, and that agreement was for an unlawful

10  objective.  In this case, that unlawful objective was to

11  engage in conduct that violated 18 U.S.C. 2101, which is the

12  federal riot statute.  And the second element of that crime is

13  that at some point in time during the conspiracy that the

14  defendant or another co-conspirator committed at least one

15  overt act and for the furtherance of achieving that objective.

16             The elements of 18 U.S.C. 2101 are twofold as well.

17  That is, that a person traveled in interstate commerce or used

18  a facility of interstate commerce with one of the four intents

19  that are provided in the statute.  The first is to incite a

20  riot; second is to organize, promote, encourage, participate

21  in or carry on in a riot; the third is to commit any act of

22  violence in furtherance of a riot; and fourth is to aid and

23  abet any person in inciting, participating in, or carrying on

24  in or committing any act of violence in furtherance of a riot.

25             The second element of 18 U.S.C. 2101, the federal

1   riot statute, is that during the course of travel, or use, or

2   thereafter, that the defendant performed or attempted to

3   perform any overt act for those purposes.

4          THE COURT:  All right.  Mr. Daley would you stand

5   again, please.

6          Do you understand what the government would have to

7   prove beyond a reasonable doubt before you could be found

8   guilty?

9          THE DEFENDANT:  I do, Your Honor.

10         THE COURT:  And do you understand the range of

11  punishment provided in such cases?

12         THE DEFENDANT:  I do.

13         THE COURT:  All right.  Do you understand the

14  offense to which you are pleading guilty is a felony offense

15  and that if your plea is accepted you will be adjudged guilty

16  of that offense and such adjudication may deprive you of

17  valuable civil rights, such as the right to vote, the right

18  hold public office, the right to serve on a jury, and the

19  right to possess any kind of firearm?

20         THE DEFENDANT:  Yes.

21         THE COURT:  Do you understand that the Court will

22  impose a special assessment of $100?

23         THE DEFENDANT:  Yes.

24         THE COURT:  Do you understand -- well, strike that.

25         Have you and your attorney talked about how the

 1    Sentencing Commission Guidelines might apply to your case?

 2                THE DEFENDANT:  Yes.

 3                THE COURT:  Do you understand that the Court will

 4    not be able to determine a sentence for your case until after

 5    a presentence report has been completed and you and the

 6    government have had an opportunity to challenge the facts

 7    reported by the probation officer?

 8                THE DEFENDANT:  Yes.

 9                THE COURT:  Do you understand that the judge has the

10    authority to impose a sentence that is more severe or less

11    severe than the sentence called for by the guidelines provided

12    the judge acts in accordance with the law and the evidence in

13    your case?

14                THE DEFENDANT:  Yes.

15                THE COURT:  And do you understand that under some

16    circumstances you or the government may have the right to

17    appeal any sentence that I impose?

18                THE DEFENDANT:  Yes.

19                THE COURT:  And do you understand that parole has

20    been abolished and that if you're sentenced to prison you will

21    not be released on parole?

22                THE DEFENDANT:  Yes.

23                THE COURT:  And do you understand that, if the

24    sentence is more severe than you expected, you will still be

25    bound by your plea and have no right to withdraw it?

 1          THE DEFENDANT:  Yes.

 2          THE COURT:  All right.  You may have a seat, and

 3    then I'll ask counsel to summarize the terms of your plea

 4    agreement.

 5          MS. LORISH:  Your Honor, Mr. Daley's plea agreement

 6    is entered into pursuant to Rule 11(c)(1)(c), which

 7    distinguishes it from the other plea agreements in this

 8    indictment.

 9          Pursuant to 11(c)(1)(c), the takeaways here are that

10    he's pleading guilty to Count One.  The government would

11    dismiss Count Two.

12          There is an agreed range of incarceration between 27

13    months at the low end and 42 months at the high end.  The

14    parties are agreeing that it would be reasonable for a

15    sentence to fall anywhere within that range.  And under

16    11(c)(1)(c), if the Court would reject this plea agreement, of

17    course, Mr. Daley could withdraw his guilty plea.  The parties

18    are able to argue for any sentence within that range.  The

19    government can argue above the guideline range if that were

20    the case.

21          There are guideline stipulations in this case as

22    well.  The aggravated assault guideline; an enhancement for

23    minimal planning; an enhancement for bodily injury.  And

24    distinguishing this from the other plea agreements you've

25    seen, Mr. Daley has also agreed to a two-point enhancement for

```
 1    being an organizer or a leader.
 2            Like Mr. Miselis' plea agreement, which the Court
 3    has just considered, the defendant waives his rights to appeal
 4    with the exception of appealing that 18 U.S.C. 2101 is
 5    unconstitutional.
 6            He also waives his right to collaterally attack
 7    except for the things that cannot be waived.
 8            And he likewise has a provision of his plea
 9    agreement that states this is a completion of prosecution so
10    that he cannot be prosecuted in this district or the Central
11    District of California for any additional violations of 18
12    U.S.C. 2101.
13            And I believe those are the significant parts of the
14    plea agreement, Your Honor.
15            THE COURT:  All right.  Government have anything to
16    add?
17            MR. KAVANAUGH:  No, Your Honor.
18            THE COURT:  Okay, thank you.
19            Would you stand again, Mr. Daley.
20            Did you read and understand the agreement before you
21    signed it?
22            THE DEFENDANT:  Yes.
23            THE COURT:  And you heard your counsel speak of the
24    agreement.  Did she say anything about the agreement that's
25    different from your understanding of the agreement?
```

```
 1              THE DEFENDANT:  No.

 2              THE COURT:  Other than the agreement, has anyone

 3    made any promise or assurance to you of any kind in an effort

 4    to induce you to plead guilty?

 5              THE DEFENDANT:  No.

 6              THE COURT:  Has anyone attempted to force you to

 7    plead guilty?

 8              THE DEFENDANT:  No.

 9              THE COURT:  All right.  The agreement calls for you

10    to give up your right to appeal the guilty verdict and

11    sentence in the case with certain exceptions; namely, being

12    the constitutional question.  I guess he still --

13              MS. LORISH:  I'm sorry, Your Honor.

14              THE COURT:  That's part of the -- he can still

15    appeal that.

16              MS. LORISH:  That's correct, Your Honor.

17              THE COURT:  But other than what's in the plea

18    agreement, you're giving up your right to appeal the guilty

19    verdict and sentence in the case.

20              THE DEFENDANT:  Yes.

21              THE COURT:  And are you voluntarily doing so?

22              THE DEFENDANT:  Yes.

23              THE COURT:  And you -- are you voluntarily giving up

24    your right to collaterally attack the judgment at some later

25    date --
```

```
1              THE DEFENDANT:  Yes.

2              THE COURT:  -- as set forth in the plea agreement?

3         Okay.  You may have a seat then.

4              And I'll ask the Assistant United States Attorney to

5    summarize the government's evidence.

6              MR. KAVANAUGH:  Your Honor, for this case there is a

7    five-page single-spaced statement of offense which the

8    government, as well as the defendant and his counsel, have

9    signed which represents the evidence and what the facts at

10   trial would be proven beyond a reasonable doubt if this were

11   to proceed to trial.

12             The government is happy again to read that into the

13   record but is also satisfied to tender that to the Court as

14   far as what the evidence and what the agreed-upon facts are.

15             THE COURT:  The Court is willing to accept the

16   statement without it being read into the record as long as the

17   defendant agrees that it is a correct statement.  Counsel?

18             MS. LORISH:  That's correct, Your Honor.  He's

19   agreed that these are the facts the government would prove,

20   and I'm happy to tender the written --

21             THE COURT:  Do you agree, Mr. Daley?

22             THE DEFENDANT:  Yes.

23             THE COURT:  Thank you, all right.  The Court will

24   accept that.

25             Would there be -- the defendant has no other
```

```
 1   evidence, I take it.
 2           MS. LORISH:  No, Your Honor.
 3           THE COURT:  All right.  Mr. Daley would you stand
 4   again, please.
 5           How do you plead to Count One, guilty or not guilty?
 6           THE DEFENDANT:  Guilty.
 7           THE COURT:  It's the finding of the Court the
 8   defendant is fully competent and capable of entering an
 9   informed plea, that his plea of guilty is a knowing and
10   voluntary plea supported by an independent basis in fact
11   containing each of the essential elements of the offense.  His
12   plea is, therefore, accepted, and he's now adjudged guilty of
13   that offense.
14           I will order a presentence report.  It is in your
15   best interest to cooperate with the probation officer in
16   furnishing information in that report, because the report will
17   be important in my decision as to what your sentence will be.
18   Your attorney may be present during any interview if you so
19   desire.  You and your counsel have a right and will have an
20   opportunity to review the report before the sentencing
21   hearing, and you'll have a right to comment on the report at
22   the time of the sentencing hearing.  You and your counsel will
23   have an opportunity to speak on your behalf at the sentencing
24   hearing.
25           You may have a seat.  I'll ask the clerk to read the
```

```
 1    guilty plea form, and it will be brought to you for

 2    execution.

 3              THE CLERK:  This is Criminal Action Number

 4    3:18-cr-25, United States of America v. Benjamin Drake Daley,

 5    Defendant Number 1.

 6              In the presence of Lisa Lorish, my counsel, who has

 7    fully explained the charges contained in the indictment

 8    against me, and having received a copy of the indictment from

 9    the United States Attorney before being called upon to plead,

10    I hereby plead guilty to said indictment and Count One

11    thereof.  I have been advised of the maximum punishment which

12    may be imposed by the Court for this offense.  My plea of

13    guilty is made knowingly and voluntarily and without threat of

14    any kind other than those disclosed here in open court [sic].

15              Is this correct?

16              THE DEFENDANT:  Yes.

17              MS. LORISH:  Along with the waiver form, we're also

18    tendering the official copies of the plea agreement and

19    statement of facts.

20              THE COURT:  Thank you.

21              THE CLERK:  Guilty plea form has been executed, Your

22    Honor.

23              THE COURT:  All right.  Do you have a date for

24    sentencing?

25              THE CLERK:  July 19 at 11.
```

```
 1              THE COURT:  Okay.

 2              MR. KAVANAUGH:  That works for the government.

 3              THE COURT:  All right.  Is there anything else in

 4     these cases?

 5              MR. KAVANAUGH:  Not from the government, Your

 6     Honor.

 7              MS. LORISH:  No, thank you, Judge.

 8              THE COURT:  Okay.  We'll recess.

 9              THE MARSHAL:  All rise.

10     (The proceedings concluded 10:34 a.m.)

11                          CERTIFICATE

12              I, Mary J. Butenschoen, certify that the foregoing

13     is a correct transcript from the record of proceedings in the

14     above-entitled matter.

15     /s/ Mary J. Butenschoen, RPR, CRR                1/09/2020

16

17

18

19

20

21

22

23

24

25
```

### IN THE UNITED STATES DISTRICT COURT
### FOR THE WESTERN DISTRICT OF VIRGINIA
### CHARLOTTESVILLE DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:18-cr-25** |
| | ) | |
| **BENJAMIN DALEY** | ) | |
| | ) | |
| **Defendant.** | ) | |

### DALEY'S MOTION FOR RELEASE PENDING APPEAL AND MEMORANDUM IN SUPPORT

Defendant Benjamin Daley submits the following motion for release pending appeal and incorporated memorandum of law in support of the motion, pursuant to 18 U.S.C. § 3143(b).

### Procedure

Daley was arrested in the Central District of California on October 2, 2018, on a complaint issued in this district on August 27, 2018.  ECF 3.  On October 10, 2018, Daley and three other defendants were indicted and charged with conspiracy to commit an offense against the United States, to-wit, traveling in interstate commerce with the intent to riot, 18 U.S.C. § 2101, in violation of 18 U.S.C. § 371 (Count One), and a substantive violation of 18 U.S.C. § 2101 (Count Two).  The charges were related to the conduct of Daley and the others at the "Unite the Right" rally in Charlottesville on August 12, 2017.  ECF 7.

Daley had his initial appearance in this district on November 1, 2018 and

1

entered a plea of not guilty to the charges in the indictment.  The Federal Public Defender was appointed to represent Daley.  On November 20, 2018, Daley filed a motion seeking pretrial release on bail.  ECF 53.  The government moved for detention, and on December 3, 2018, a hearing was held.  The magistrate judge denied bail and entered an order of detention.  ECF 65.

On February 1, 2019, Daley moved to dismiss the indictment for the reason that the statute under which he was being prosecuted, the federal Anti-Riot Act, 18 U.S.C. § 2101, is unconstitutional.  ECF 72.  A hearing on the motion was held on April 22, 2019, and on May 2, 2019, the court issued a memorandum opinion denying the motion.  ECF 104.  On May 3, 2019, Daley entered a guilty plea, pursuant to a plea agreement under which he agreed to plead guilty to Count One of the indictment (conspiracy), and reserved the right to appeal the decision of the district court as to the constitutionality of 18 U.S.C. § 2101.  ECF 113.  On May 22, 2019, Daley's co-defendant, Cole White, was released on bond without objection from the Government.  Defendant White originally pled guilty in November of 2018.

Daley is scheduled to be sentenced on July 19, 2019.  The maximum penalty for violation of 18 U.S.C. § 371 is five (5) years imprisonment, a fine of $250,000, and a term of supervised release of three years.  Daley intends to file a notice of appeal immediately after being sentenced.

## Standard for Release Pending Appeal

The standard for granting bail pending appeal—where there is no risk of flight, no danger to the community, and the appeal is not taken solely for purposes

2

of delay—is whether the appeal presents "a substantial question of law or fact" that, if successful, is "likely to result in reversal or an order for a new trial of all counts on which imprisonment has been imposed." *United States v. Miller*, 753 F.2d 19, 24 (3d Cir. 1985) (construing 18 U.S.C. § 3143(b)). For the reasons set forth, Daley submits that his appeal will present a question that satisfies this standard and entitles him to release on bail pending appeal.

## Statutory Provisions, 18 U.S.C. 3143

(b)     Release or Detention Pending Appeal by the Defendant.—

(1) Except as provided in paragraph (2), the judicial officer shall order that a person who has been found guilty of an offense and sentenced to a term of imprisonment, and who has filed an appeal or a petition for a writ of certiorari, be detained, unless the judicial officer finds—

> (A) by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b) or (c) of this title; and

> (B) that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in—

>> (i) reversal,

>> (ii) an order for a new trial,

>> (iii) a sentence that does not include a term of imprisonment, or

>> (iv) a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process.

> If the judicial officer makes such findings, such judicial officer shall order the release of the person in accordance with section 3142(b) or (c) of this title, except that in the circumstance described in subparagraph (B)(iv) of this paragraph, the judicial officer shall order the detention terminated at the expiration of the likely reduced sentence.

(2) The judicial officer shall order that a person who has been found guilty of an offense in a case described in subparagraph (A), (B), or (C) of subsection (f)(1) of section 3142 and sentenced to a term of imprisonment, and who has filed an appeal or a petition for a writ of certiorari, be detained.

3

1.      **If Released on Terms and Conditions, Daley Is Not Likely to Flee or Pose a Danger to the Safety of Any Other Person or the Community**.

On November 20, 2018, Daley moved for pretrial release on bail.  ECF 53.  On December 3, 2018, a hearing was held before the magistrate judge at which Daley's parents appeared, having traveled from their home in Oregon. Transcript of detention hearing, ECF 90.

Ms. Daley testified that she and her husband have lived in the same home in Oregon for 25 years, and that is where Daley grew up and where he would live if released.  ECF 90 at 8.  Mr. Daley owns a construction company and would employ Daley if he is released.  They proposed to serve as third-party custodians for Daley and be responsible for his compliance with the terms of release, including the costs of electronic monitoring.  They also promised to cooperate with the probation office in restricting his internet access.

In summary Daley proposed the following release plan:  (1) release to custody of his parents in Oregon on home confinement and electronic monitoring conditions; (2) be employed in his parents' construction company; (3) leave the home only for work, attendance at AA meetings and religious services; and (4) no internet access. He does not currently have a passport and would not obtain a new one.

All of the conduct the government relied on to oppose bail occurred prior to August 12, 2017.  There is no evidence that Daley engaged in any acts of violence or encouraged any acts of violence between August 12, 2017 and October 2, 2018, when he was arrested.  Furthermore, the Government agreed to the release of Cole White in May of 2019.  Mr. White admitted to the same offense that Daley admitted to,

4

and has a similar criminal record.  Therefore, there is clear and convincing evidence that if Daley is released pending appeal he will not be a flight risk or a danger to the community, in the same way that Mr. White was not a flight risk or danger.

## 2.    Daley's Appeal Presents a Substantial Question of Law

In addition to assurance that the defendant seeking release pending appeal is not a flight risk or poses a danger to the community, the statute requires that the appeal presents a "substantial question of law," is not for purposes of delay, and is likely to result in reversal, an order for a new trial, or  elimination or reduction of a sentence of imprisonment.  18 U.S.C. § 3143(1)(B).

To qualify as "a substantial question of law," Daley "need not show a likelihood of success on appeal," *United States v. Garcia*, 340 F.3d 1013, 1020 n. 5 (9th Cir. 2003); rather he need only show that his appeal presents' "'a close question or one that very well *could* be decided the other way." *United States v. Steinhorn*, 927 F.2d 195, 196 (4th Cir. 1991) (quoting *United States v. Giancola*, 754 F.2d 898, 901 (11th Cir. 1985) (emphasis added)).  As the Supreme Court has explained in describing a similar standard:

> [The defendant] need not show that he should prevail on the merits. He has already failed in that endeavor. Rather, he must demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues in a different manner; or that the questions are adequate to deserve encouragement to proceed further.

*Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983) (citation and alterations omitted).

Daley's appeal addresses the same issue he raised in his motion to dismiss the indictment:  the constitutionality of the federal Anti-Riot Act, 18 U.S.C. § 2101.

5

Although this court denied Daley's motion and ruled that the Anti-Riot Act is constitutional, *United States v. Daley*, 378 F.Supp.3d 539 (W.D.Va. 2019), several weeks later a district court in California considering the identical issue raised by Daley reached the opposite conclusion and declared the federal Anti-Riot Act to be facially unconstitutional. *United States v. Rundo*, Case No. 2:18cr00759 (C.D.Cal., June 3, 2019).[1] (Copy of opinion and order attached as Exhibit #2.) Since two district courts considering identical issues and arguments reached opposite conclusion, it can hardly be argued that that the issue Daley raises on appeal is not "debatable among jurists of reason."

Although Daley argued that the federal Anti-Riot Act is unconstitutional for several reasons, the gist of his argument is that the Act is overbroad because it regulates a substantial amount of protected speech and assembly. The Act infringes on protected speech because it does not contain an "imminence" requirement between provocative speech and lawless action. Without an imminence requirement, the Act criminalizes speech or conduct advocating or inciting violence that may be far removed in time and place from any lawless action. Thus, the Act runs afoul of *Brandenburg v. Ohio*, 395 U.S. 444, 447 (1969) , which recognizes only a narrow exception to the First Amendment that permits the government to prohibit advocacy of the use of force or violating the law only "where such advocacy is directed to inciting or producing imminent lawless action and is likely to incite or

---

[1] On June 12, 2019, the government filed a notice of appeal as to the order granting the motion to dismiss the indictment. ECF 152.

6

produce such action."

This court circumvented the "imminence" argument by reading an imminence requirement into the statute even though it does not expressly contain one, following the reasoning expressed in *United States v. Dellinger*, 472 F.2d 359, 361-63, (7th Cir. 1972), which also rewrote the statute to avoid the "imminence" problem. Essentially the court relied on the definitions of the words "incite," "organize," "promote," and "encourage" in conjunction with the words "urge" and "instigate" to find that taken together they put "a sufficient gloss of propulsion" that imply "the required relation to action." ECF 104 at 19-20. However, the Supreme Court has recently reinforced that courts should not rewrite statutes to make them constitutional. In *United States v. Davis*, 588 U.S. ___ (2019) (declaring 18 U.S.C. § 924(c)(3)(B) unconstitutionally vague), the Court stated "the role of courts under our Constitution is not to fashion a new, clearer law to take its place, but to treat the law as a nullity. . . ."

The *Rundo* court analyzed the Act by determining that it has two elements: (1) travel or use of interstate commerce with intent (to incite a riot, participate in or carry on a riot, commit any act in furtherance of a riot, or aid and abet another person to incite, participate in, commit any act in furtherance, etc., of a riot); and (2) commit an overt act for the purpose of inciting, participating in, committing an act in furtherance, etc., a riot. Ex. 2 at p. 5. The problem with the statute, as the court points out, is that the overt act that is criminalized can be committed "either during the course of any such travel or use or *thereafter*. . . ." [emphasis supplied] The

7

statute does not require a temporal relationship between the travel or use of

interstate commerce and the commission of the overt act.  Nor does the statute

require causation between the overt act and a "riot," which the statute defines as a

public disturbance involving acts of violence or the threat of violence.

> The Anti-Riot Act, however, does not just criminalize the behavior of those in
> the heat of a riot.  It also criminalizes acts taken long before any crowd
> gathers, or acts that have only an attenuated connection to any riot, so long
> as the individual acts with the required purpose. [ ] No violence even need to
> occur.  A defendant could be convicted for renting a car with a credit card,
> posting about a political rally on Facebook, or texting friends about when to
> meet up.

Ex. 2 at p. 6.

Because there is "no imminence requirement," the *Rundo* court found that

"[t]he Anti-Riot [Act] does not require that advocacy be directed toward inciting or

producing imminent lawless action" and that it "criminalized advocacy even where

violence or lawless action is not imminent." *Id.* at p. 7.  As a result, the Act

"eviscerates *Brandenburg*'s protections of speech." *Id.* In so holding, *Rundo* largely

adopts the dissent in *Dellinger* which considered the Act unconstitutional:

> There is no required causal relationship between the travel with intent
> and the riot actually incited. No necessary connection whatsoever need
> be shown between them nor is there any time limitation as to when the
> overt act shall take place with relationship to the travel. I cannot
> conceive the constitutional validity of a statute which in this open-
> ended manner punishes a person at the federal level for what would
> otherwise be a local crime only because at some time in his past he had
> crossed a state line or had used a facility of interstate commerce with a
> nefarious intent.

*Dellinger*, 472 F.2d at 414.  Rather than limit the scope of the statute to acts of

violence and imminent threats of violence, the statute encompasses speech and

8

conduct that occur *before* the riot, perhaps long before the riot, and perhaps long after the travel or use of interstate commerce that triggers federal jurisdiction for the application of the statute.

The *Rundo* court explained that the definition of "riot" does not save the Anti-Riot Act because "[t]he 'riot' is some event in the future" whereas the "crime is the 'overt act' made with the purpose of urging or instigating that future event." Ex. 2 at p. 8. Therefore "[e]ven if the riot itself would eventually pose a clear and present danger, the overt act does not." *Id.* Finally, the court rejected the assertion that the terms "incite," "organize," "promote," and "encourage" saved the statute by creating an imminence requirement. "Even if terms like 'organize' or 'promote' imply *some* degree of action—like urging people to attend an event—there is no requirement that the organizing or promoting be directed towards *imminent* violence or lawless action—that event, for instance, could be months away." *Id.* at p. 9.

The Anti-Riot Act was enacted in 1968, before the Supreme Court held implicitly in *Brandenburg*, 395 U.S. at 447-48, and expressly in *Hess v. Indiana*, 414 U.S. 105, 108-09 (1973), that mere advocacy of violence is protected speech. As the dissent in *Dellinger*, 472 F.2d at 412, points out, the Anti-Riot Act was intended to punish just this. And now the *Rundo* court has agreed that the act ultimately "does not focus on the regulation of violence" but on "*pre*-riot communications and actions" and "in doing so, it sweeps in a wide swath of protected expressive activity as part of its efforts to punish rioting."

## **Conclusion**

The issue Daley intends to raise on appeal, the constitutionality of 18 U.S.C. § 2101, presents a substantial question of law that is debatable among jurists of reason. Daley is not prosecuting this appeal for reasons of delay. If successful, the result will be a reversal, a vacation of Daley's conviction, and dismissal of the indictment. Daley has presented a release plan that assures he will not be a flight risk or a danger to the community. Without release on bond, there is a distinct possibility that he will serve most, if not all, of his sentence before his appeal is decided. Because it at least possible that his appeal will result in a reversal of his conviction and dismissal of the indictment, the fact that he will have served most, or all, of his sentence before the appeal is decided is a factor weighing towards release.

Respectfully submitted,

BENJAMIN DALEY

By Counsel

Counsel:

/s Frederick T. Heblich
Frederick T. Heblich, Jr. (VSB 21898)
First Assistant Federal Public Defender
Office of the Federal Public Defender
401 E. Market Street, Ste. 106
Charlottesville, VA 22902
Tel. (434) 220-3386

Lisa M. Lorish (VSB No. 81465)
Assistant Federal Public Defender
Office of the Federal Public Defender
401 E. Market St, Ste 106
Charlottesville, VA 22902
Tel (434) 220-3380

10

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 15, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following: counsel of record; and I hereby certify that I have mailed by United States Postal Service the document to the following non-CM/ECF participants: none.

s/ Lisa M. Lorish
Asst. Federal Public Defender

11

IN THE
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

UNITED STATES OF AMERICA    )
        )
        )
V.        )
        )    Case No. 3:18CR000025-002
        )
MICHAEL PAUL MISELIS,    )
    Defendant    )
        )

## Motion for Release Pending Appeal

**COMES NOW**, the defendant, Michael Paul Miselis (hereinafter, 'Mr. Miselis' or 'defendant Miselis'), by counsel, and respectfully requests that the Court grant Mr. Miselis bail pending his appeal of the constitutionality of the federal Anti-Riot Act set forth in 18 U.S.C. §2101.

On October 10, 2018, Mr. Miselis and three other defendants were indicted and charged with conspiracy to commit an offense against the United States, to wit, travelling in interstate commerce with the intent to riot, 18 U.S.C. §2101, in violation of 18 U.S.C. §371 (Count One), and a substantive violation of 18 U.S.C. §2101 (Count Two).

On February 5, 2019, Mr. Miselis joined defendant Benjamin Daley in a motion to dismiss the indictment for the reason that the statute under which he was being prosecuted, the federal Riot-Act, 18 U.S.C. §2101, is unconstitutional. On April 22, 2019, the Court held a hearing on the motion and heard arguments of counsel. On May 3, 2019, Mr. Miselis entered a guilty plea pursuant to a plea agreement to Count One of the Indictment, and reserved the right to appeal the decision of the district court as the constitutionality of 18 U.S.C. §2101. On May 2, 2019, the Court issued a memorandum opinion setting forth its reasons for denying the motion.

Miselis is scheduled for sentencing on July 19, 2019. Miselis intends to file a notice of appeal immediately after being sentenced.

### Factual Background

As detailed in the Sentencing Memorandum filed herein as well as set forth in the Presentence

Investigative Report (PSIR), Mr. Miselis is a life-long resident of the State of California, in the Stockton area. Until the instant case, Mr. Miselis has never been accused of committing a crime. At the time of his arrest, Mr. Miselis was a Ph.D. candidate in the Aerospace Engineering Program at U.C.L.A. Mr. Miselis was also employed with Northup Grumman as a Modeling and Simulation Analyst. Mr. Miselis intends to complete his Ph.D. program upon release from confinement. Mr. Miselis's mother, Judy Miselis, of Stockton, California, will be present at the sentencing hearing on July 19, 2019. Mr. Miselis's father, Dr. Kenneth Miselis, owns Heritage, Eye, Skin, and Laser Center in Stockton, California. Dr. and Mrs. Miselis intend to allow defendant Miselis to live with them after he is released from custody. Mr. Miselis is assured a fixed and stable residence, in addition to his continuing graduate studies.

<u>Statutory Requirements</u>

Pursuant to the requirements of 18 U.S.C. §3143, the defendant maintains that under these circumstances he is not a flight risk and does not pose a danger to the safety of any person or the community if released pending an appellate decision. The anticipated appeal will be narrowly focused on the constitutionality of the statute under which Mr. Miselis stands convicted. The appeal is not for the purposes of delay and raises a substantial question of law that, if successful, will result in a reversal of the conviction. Importantly, Mr. Miselis need not show a likelihood of success on appeal, <u>United States v. Garcia</u>, 340 F.3d 1013, 1020, n. 5 (9th Cir. 2003), but only that the appeal presents an issue that could be decided either way. <u>United States v. Steinhorn</u>, 927 F.2d 195, 196 (4th Cir. 1991). It is noteworthy that the so-called "Chicago 7" case originating in 1968, to the cases arising from the 2016 presidential inauguration in Washington, D.C., to the prosecution of the RAM defendants in the Central District of California in 2019, it is difficult to identify a defendant who was convicted under 18 U.S.C. §2101, or whose conviction under that statute was affirmed on appellate review.[1] Last month a district court in the Central District of California considered the identical constitutional issue that Mr. Miselis intends to raise on appeal and concluded, on June 3, 2019, that 18 U.S.C. §2101 is facially unconstitutionality. The California district court in these cases accordingly issued an Order dismissing the indictments against the

_____

[1] Albeit only a few of these case dispositions were the result of challenges to the constitutionality of the statute.

several defendants prosecuted thereunder.  (<u>United States v. Rundo</u>, Case No. 2:18-cr-00759 (C.D. Cal.,

June 3, 2019).  That decision is now under appellate review and clearly constitutes a substantial question of

law.

Respectfully  Submitted,

MICHAEL PAUL MISELIS

S/\Warren (Gene) Cox

By: _____

Of Counsel

Warren "Gene" Cox, VA Bar #33712
genecox@coxfedlaw.com
308 Spotswood Avenue
Elkton, VA 22827
(540) 742-5385 phone (540)
779-0609 fax

I hereby certify that on this 18th day of July, I electronically filed the foregoing
with the Clerk of Court using the CM/ECF system that will send notification of such filing to
all counsel of record.

S/Warren (Gene) Cox

Warren "Gene" Cox
VA BAR #33712
genecox@coxfedlaw.com
308 W. Spotswood Ave.
Elkton, VA 22827
(540) 742-5385 (phone)
(540) 779-0609 (fax)