No. 19-4550 (L)

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**UNITED STATES OF AMERICA**,

*Appellee,*

v.

**MICHAEL MISELIS, et al.,**

*Appellants.*

On Appeal from the United States District Court
for the Western District of Virginia
Charlottesville Division (Hon. Norman K. Moon)

**APPELLANTS' PETITION FOR PANEL REHEARING OR IN THE
ALTERNATIVE REHEARING *EN BANC***

**JUVAL O. SCOTT**
Federal Public Defender
  for the Western District of Virginia

**LISA M. LORISH**
Assistant Federal Public Defender
401 E. Market Street, Suite 106
Charlottesville, VA  22902
(434) 220-3380

*Counsel for Appellant Daley*

**RAYMOND C. TARLTON**
TARLTON | POLK PLLC
3905 Haworth Drive, Suite 207 (27609)
PO Box 1386 (27602)
Raleigh, NC
(919) 948-6464

*Counsel for Appellant Miselis*

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES .......................................................................ii

STATEMENT OF REASONS FOR REHEARING ...................................1

INTRODUCTION ...................................................................................2

    I.    The result of the panel opinion's severance analysis is a judicially-created law that Congress would not have passed ......................................................4

    II.    The version of the Anti-Riot Act this Court left in place is still so overbroad and vague as to have a chilling effect on legitimate speech ...................................9

    III.    The panel opinion conflicts with *United States v. Chapman*, 666 F.3d 220 (4th Cir. 2012) .............................................................................11

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

*Alaska Airlines, Inc. v. Brock*, 480 U.S. 678 (1987) ....................................................8

*Barr v. Am. Ass'n of Political Consultants, Inc.*, 140 S. Ct. 2335 (2020)...............4, 5, 6, 7, 11

*Brandenburg v. Ohio*, 395 U.S. 444 (1969) ...........................................................2, 7

*Railroad Retirement Bd. v. Alton R. Co.*, 295 U.S. 330 (1935).................................9

*United States v. Avery*, 4:20-mj-7180 (E.D.Mo.) .....................................................11

*United States v. Brandon*, 298 F.3d 307 (4th Cir. 2002)........................................13

*United States v. Chapman*, 666 F.3d 220 (4th Cir. 2012)...................................1, 11, 12, 13

*United States v. Peavy*, No. 4:20-mj-6092 (N.D.Ohio).........................................11

*United States v. Reese*, 92 U.S. 214 (1876) .............................................................3

*United States v. Rundo, et. al.*, No. 2:18-cr-759-CJC, D.E. 145 (C.D. Cal. June 3, 2019)...8

*United States v. Vann*, 660 F.3d 771 (4th Cir. 2011)............................................12

*United States v. Stevens*, 559 U.S. 460 (2010) .................................................1, 6, 7

<u>Other Sources</u>

18 U.S.C. § 48....................................................................................................6

18 U.S.C. § 922..................................................................................................12

18 U.S.C. § 1344 ...............................................................................................13

18 U.S.C. § 2101 ........................................................................................*passim*

18 U.S.C. § 2102 ........................................................................................*passim*

47 U.S.C. § 608.................................................................................................................4

<u>STATEMENT OF REASONS FOR REHEARING</u>

This Court should grant panel rehearing, or rehearing *en banc*, in this case for several reasons. This issue presented – the constitutionality of the federal Anti-Riot Act ("Act") – is one of exceptional importance. When this appeal was argued in January of 2020, this question was important, but in a largely theoretical way, as the law had only been used to complete one successful prosecution in more than fifty years. The chilling effect the Act would have on legitimate speech could be imagined, but was not happening in real time. In the intervening nine months, the Act has been repeatedly invoked by the Attorney General of the United States, the President of the United States, and by numerous others, in response to recent civil unrest. At least 10 prosecutions have been instigated under the Act in Illinois, Minnesota, New Jersey, Ohio, Tennessee, and South Carolina in the last few months, and untold other people and groups have been investigated for potential charges that have not yet been filed.

The panel's decision on severance conflicts with *United States v. Stevens*, 559 U.S. 460 (2010). Further, the portion of the statute the panel opinion leaves in place is still overbroad and unduly vague. Finally, the panel opinion's conclusion that the Appellants pled guilty to the constitutional portion of the statute conflicts with *United States v. Chapman*, 666 F.3d 220 (4th Cir. 2012).

INTRODUCTION

The Appellants brought a facial challenge to the constitutionality of the Anti-Riot Act, arguing that it was both overbroad and vague.  The heart of the overbreadth argument is that the law swept far past the incitement of imminent and likely violence which falls outside of First Amendment protection.  The vagueness argument is related, but centers on several of the Act's definitions, including the definition of riot itself.  The panel opinion agreed in part – finding that the Act was facially overbroad and that it swept up a substantial amount of speech that was protected advocacy under *Brandenburg v. Ohio*, 395 U.S. 444 (1969) (per curiam).  But the panel concluded that the instances of overbreadth were discrete and severable, and that the Appellants' guilty pleas conclusively established their conduct fell under the surviving applications.

There are two fundamental problems with the analysis.  First, the panel left in place a law that it describes as "consistent with Congress's basic objective in enacting the Anti-Riot Act" which was "to proscribe, to the maximum permissible extent, unprotected speech and conduct that both relates to a riot and involves the use of interstate commerce."  Opinion p. 37.  The panel assumed that because Congress drafted the statute to "encompass the full scope of such unprotected speech as of 1968" it must have wanted to "enact this appropriately narrowed version of the statute" instead of "none at all."  Opinion p. 38.  But the panel reached this conclusion without looking at any of the legislative history that showed Congress's objective was specifically to target the speech that *Brandenburg v. Ohio*, 395 U.S. 444

(1969) protects.  *See* Reply Br. at pp. 5-8; 26-29.  Congress repeatedly explained that the Act was not focused on acts of violence themselves, but the events that preceded riots – the speaking, teaching, and agitating.  *Id.* at pp. 28-29.  For this reason, the Act contained an express carve-out to clarify that it was not taking jurisdiction away from the states to prosecute actual rioting behavior.   The Act left in place by the panel opinion is a "new law" that has "substitute[d] the judicial for the legislative department of the government." *United States v. Reese*, 92 U.S. 214, 221 (1876).

But perhaps more critically, the Act this Court left in place is still so overbroad and vague as to have a chilling effect on legitimate speech.  The definition of riot set forth in 18 U.S.C. § 2102(a) is unsurprisingly central to the statute.  The panel opinion found there were no overbreadth problems in the definition of "riot" focusing on the clear-and-present-danger test.  The panel found that the relation between "incitement and rioting" was governed by the verb "incite" and not the clear-and-present-danger test, and that there was therefore no problem with the definition.  Opinion pp. 30-31. However, this Court did not resolve the arguments presented by the Appellants that the central problem with the definition of a riot is that any public assembly where there is the potential for actual or threatened violence counts as a riot, without regard for whether or not the speaker intended violence.  Put in the most practical terms, any protest against police violence in 2020 is functionally a public disturbance that involves a threat of the commission of an act of violence by at least one person in a group of more than three people who has the ability to carry out the threat, and

3

therefore every protest qualifies as a riot whether or not violence breaks out, or the person planning to attend intended to participate in violent action. Therefore, under this Court's interpretation of the Act, anyone who uses commerce with the intent of participating in, or organizing, one of these protests where violence may break out, and then actually attempts to participate in or organize the same, is guilty under the Act. The potential for conspiracy liability makes the net even broader.

Finally, the panel was wrong to conclude that the Appellants pled guilty to conspiracy to violate the portions of the Act that this Court left in place when their plea agreements and plea colloquies are ambiguous on this point.

I. <u>The result of the panel opinion's severance analysis is a judicially-created law that Congress would not have passed.</u>

After holding that the Act was substantially overbroad, Opinion p. 33, the panel decision turned to severability as a potential remedy. Relying on a Supreme Court plurality opinion decided six months after the parties briefed this case and five months after oral argument, the panel decision cited to *Barr v. Am. Ass'n of Political Consultants, Inc.*, 140 S. Ct. 2335, 2350 (2020) which noted a "strong presumption of severability." *Id.* Yet, unlike the Act at issue, the Telephone Consumer Protection Act analyzed in the *Barr* decision expressly included a severability clause. *See* 47 U.S.C. § 608.[1]

---

[1] In dicta, the Supreme Court's plurality opinion noted that it would have also excised the offending portion of the Telephone Consumer Protection Act under the general "presumption of severability…" *Barr*, 140 S. Ct at 2252-53.

4

A severability clause is so important because it conclusively answers the question of Congress's intent – would Congress prefer the law exist precisely as it was enacted, or would Congress want any unconstitutional parts removed with a partial law to remain. Because it is such a clear indication of Congress's intent, "[w]hen Congress includes an express severability clause [ ] in the relevant statute, the judicial inquiry is straightforward." *Barr*, 140 S. Ct. at 2349. In *Barr*, the Supreme Court was nonetheless asked to override the text of the severability clause, an argument that the Court described as lacking force given its modern jurisprudence emphasizing precise statutory text. *Id.* The panel decision in this case erroneously applied principles underlying the "straightforward inquiry" at issue in *Barr* to the Act here that not only has no severability clause, but additional distinguishing characteristics that show Congress would not have intended the panel's result.

For example, the Court in *Barr* also emphasized the tradition of applying severability doctrine to an unconstitutional portion of a statute that was added on as an amendment to an otherwise long-standing, and well-operating, statutory scheme. *Id.* at 2353. In these circumstances, the Court has treated the original, pre-amendment statute as the "valid expression of the legislative intent" and struck down only the constitutionally-offensive amendment. *Id.* (internal citation omitted). In contrast, the Act, including the parts that the panel decision held were substantially overbroad, were enacted as one statutory scheme and there is no pre-amendment statute that can be construed as the "valid expression of legislative intent." *Id.*

5

Relying on severability as a remedy for constitutional overbreadth in this way invokes a serious constitutional concern about the authority of courts to invoke it as doing so encroaches on the prohibition of courts rewriting the law. *Id.* at 2365-66 (Gorsuch, J., dissenting in part) (internal citations omitted). The panel opinion heavily relies on *Stevens*, 559 U.S. at 481 in finding the Act to be overbroad, Opinion pp. 13, 25, 29, but does not address *Stevens* in the determining whether severance, or total invalidation, is the appropriate result. This is significant because the Act is far more comparable to the law in *Stevens*, than to the statute underlying *Barr* – both in the structure of the laws and because this case, like *Stevens*, involves a facial challenge to the constitutionality of a *criminal* law.

In *Stevens*, the Supreme Court struck down a similarly sweeping statute on First Amendment overbreadth grounds. Like this case, the relevant statute did not involve a challenged amendment to an otherwise long-standing and well-operating statutory scheme. Instead, the Supreme Court considered a statute that banned "any . . . depiction" in which "a living animal is intentionally maimed, mutilated, tortured, wounded, or killed." *Id.* at 474-75 (citing 18 U.S.C. § 48). The Court determined that only two words, wounded and killed, when considering the ordinary meaning, did not require cruelty (when considering, for example, responsible hunting) and therefore were subject to overbreadth and the chilling of legitimate First Amendment speech. *Id.* The Court properly invalidated the entire statute to avoid "rewrite[ing] a . . . law to conform it to constitutional requirements" because "doing so would constitute a

6

serious invasion of the legislative domain." *Id.* at 481 (cleaned up, internal quotation omitted). Yet here the panel redlined two verbs, "promote," and "encourage" from a list of five expressive conduct verbs, and further struck half of the definitions of the remaining three verbs from that list ("organize," "participate in," and "carry on"), as well as half of the definition of the separately listed "incite." The right result should be outright invalidation, which was the appropriate remedy where even a smaller percentage of a criminal statute was overbroad in *Stevens.*

More fundamentally, the panel erred by concluding that Congress's basic objective in the Anti-Riot Act was "to proscribe, to the maximum permissible extent, unprotected speech and conduct that both relates to a riot and involves the use of interstate commerce" such that the panel had "no doubt that, if Congress could have foreseen the Court's decision in *Brandenburg*, it would have readily preferred to enact this appropriately narrowed version of the statue than none at all." Opinion at 37-38. The *Barr* plurality opinion itself noted the difficulty of gleaning Congressional intent absent a severance clause; "courts are not well equipped to imaginatively reconstruct a prior Congress's hypothetical intent. In other words, absent a severability or non-severability clause, a court often cannot really know what the two Houses of Congress and the President from the time of original enactment of a law would have wanted if one provision of a law were later declared unconstitutional." *Barr*, 140 S. Ct. at 2350.

Furthermore, it is far from "evident" that the enacting Congress would have enacted a version of the Act "independently" of one that lacks a provision that

7

criminalizes the advocacy of the rightness of the use of force and violence, *see Alaska Airlines, Inc. v. Brock*, 480 U.S. 678, 684 (1987), when the enacting Congress used a double negative to expressly criminalize just that. The panel opinion agreed that "we find it all the more likely that the exclusion found in the final phrase of § 2102(b) means to attach criminal consequences to such advocacy and isn't just indifferent to it." Opinion p. 30. There is no need to guess at Congress's intent in this case. Inciting a riot, organizing a riot, promoting a riot, encouraging a riot, participating in a riot, and carrying on a riot, all meant expressing beliefs about the right to commit acts of violence. Therefore, in redefining these terms, the effect is the *opposite* of what Congress clearly intended.

Given this clear statutory language, in addition to the legislative history, there is no evidence that Congress would have enacted the severed version of the statute the panel left in place. As shown by the legislative history and origins of the Act, the enacting Congress did not focus the Act "on the regulation of violence. Rather, it focuses on *pre*-riot communications and actions." *United States v. Rundo, et. al.*, No. 2:18-cr-759-CJC, D.E. 145 (C.D. Cal. June 3, 2019), *appeal docketed*, No. 19-50189 (9th Cir. June 12, 2019) (oral argument set for November 17, 2020) (finding the Act facially overbroad and invalidating it entirely, dismissing the indictments); *see also* Reply Br. pp. 5-8; 26-30. In order to not usurp the state's interest in prosecuting mid-riot conduct and demonstrate its focus on pre-riot communications and actions, Congress expressly reserved jurisdiction over conduct that simultaneously violated the

Act and local laws to local authorities. 18 U.S.C. § 2101(f). And the panel implicitly recognized this focus on pre-riot activity by construing the Act as an attempt statute rather than a commission offense. Opinion p. 20.

The enacting Congress *expressly* sought to target, in its view, *the speech* and *expressive conduct* of outside agitators who were promoting, encouraging, and urging through advocacy of acts of violence and asserting the rightness of and the right to commit an act or act of violence. The panel's solution – removing the speech verbs that have the closest fit to targeting pre-riot communications and activities – excludes from the reach of the Act most of the group of people that the enacting Congress declared to be the malevolent force that the Act would suppress. The panel decision's attempt at severance is the judicially forbidden rewriting of a statute "giv[ing] it an effect altogether different from that sought by the measure viewed as a whole," *Railroad Retirement Bd. v. Alton R. Co.*, 295 U.S. 330, 362 (1935). The right result is instead to invalidate the entire Act.

II.   The version of the Anti-Riot Act this Court left in place is still so overbroad and vague as to have a chilling effect on legitimate speech

While the panel opinion found constitutional overbreadth in several of the Act's verbs proscribing prohibited speech and conduct, the opinion rejected additional sources of overbreadth argued by the Appellants. Specifically, the statute allows for an impermissible attenuation between the formation of the intent, and a later overt act, Open. Br. at 20-22, and there are constitutional problems with the

definition of riot and the overt-act requirement of the law, Open. Br. at 13-20, 37-38. But even without rearguing these points, the law left in place by the panel is still so overbroad and vague as to chill legitimate speech.

The panel opinion agrees that no riot need occur for a violation of the Act to be complete, instead construing the law as an attempt crime. Therefore, the defendant only need to intend to organize, participate in, or carry on an event with three or more people where there is a threat of violence to satisfy the intent prong – regardless of whether the defendant personally intends to undertake any act of violence, or whether the defendant wants violence to result. If a defendant, or group, plans to participate in any protest of police violence in 2020, there is the near certainty that tempers are high, and that there will be *someone* in that crowd that threatens violence. The overbreadth of the definition of violence thereby covers an incredible swath of legitimate protest and expression.

Turning to the space between "organize" and "promote" – the panel finds that "speech tending to organize a riot serves not to persuade others to engage in a hypothetical riot, but rather to facilitate the occurrence of a riot that has already begun to take shape." Opinion p. 26. Critically, the panel observed that in the course of pre-2020 prosecutions under the Act, it was the "statute's conduct-related applications appear to form the basis of every reported prosecution under it." Opinion p. 32. Based on recent events, this is no longer the case.

In May, Attorney General Barr announced that he would prosecute protesters who cross state lines to participate in riots, citing the Anti-Riot Act.[2]  Since then, charges under the law have been instigated against at least 9 defendants, and several prosecutions involve expressive speech and not conduct-related applications.[3]  As recently as September 10, 2020, a group of 50 Congressman have cited the law to urge an investigation into groups funding protests that turn into riots.[4]

The Act left in place by the panel opinion still allows for the investigation and prosecution in these cases, and many more.  On the latter example, "funding" a riot is no doubt sufficiently related to "organizing" a riot, such that search warrants could be obtained to investigation almost any group reported to have participated in any protest-turned-riot in 2020.  The dramatic changes in the use of the Act in 2020 plainly warrant reconsideration of the panel's opinion.

III.    The panel opinion conflicts with *United States v. Chapman*, 666 F.3d 220 (4th Cir. 2012).

The panel opinion found that some components of the Act are unconstitutional and severed them from the law, leaving other parts in place.  The panel was wrong to conclude that the Appellants had necessarily pled guilty to the

---

[2] https://www.politico.com/news/2020/05/30/william-barr-george-floyd-protests-290792
[3] *See, e.g., United States v. Avery*, 4:20-mj-7180 (E.D.Mo.) (later dismissed on government motion); *United States v. Peavy*, No. 4:20-mj-6092, dkt #1 (N.D.Ohio June 5, 2020) (same)
[4] https://buck.house.gov/sites/buck.house.gov/files/20.09.10%20Riot%20Funding%20Sources%20Letter%20to%20AG%20Barr-compressed.pdf

statutory conduct left in place when their plea agreements and plea colloquy are ambiguous on this point.

In *Chapman*, this court analyzed the disjunctive construction of 18 U.S.C. § 922(g)(8)(C). This provision made it "unlawful for any person . . . who is subject to a court order" that either "includes a finding that such person represents a credible threat to the physical safety of such intimate partner or child" or "by its terms explicitly prohibits the use, attempted use, or threatened use of physical force against such intimate partner or child that would reasonably be expected to cause bodily injury." 666 F.3d at 227. This Court explained that "[a]s is required, Chapman's indictment alleged conjunctively the disjunctive components of § 922(g)(8)(C)." *Id.* But then held that "when a defendant pleads guilty to a formal charge in an indictment which alleges conjunctively the disjunctive components of a statute, the rule is that the defendant admits to the least serious of the disjunctive statutory conduct." *Id. citing United States v. Vann*, 660 F.3d 771, 774 (4th Cir. 2011) (*en banc*). Because the statutory conduct set out in § 922(g)(8)(C)(ii) was the "least serious of the statutory conduct" the Court analyzed the constitutionality of that section as applied to the defendant. *Id.*

Under *Chapman* and *Vann*, when the Appellants "plead[ ] guilty to a formal charge in an indictment which alleges conjunctively the disjunctive components of a statute" the rule is that the Appellants admitted only "the least serious of the disjunctive statutory conduct." *Id.* The panel opinion's reliance on *United States v.*

12

*Brandon*, 298 F.3d 307 (4th Cir. 2002), is misplaced. In *Brandon*, the defendant pled guilty to bank fraud under 18 U.S.C. § 1344, after filing a motion to dismiss the indictment, arguing that the facts alleged, if true, did not constitute bank fraud under § 1344 because the victim of her offense was retail merchants and not the banks. 298 F.3d at 310. On appeal, this Court found that the indictment had sufficient alleged the offense and declined to consider the defendant's argument that "her conduct does not qualify as 'false or fraudulent pretenses, representations, or promises'" under § 1344(2) because she was sufficiently charged under § 1344(1). *Id.* at 314. The Appellants in this case raised a constitutional challenge, like that in *Chapman*. They did not argue that their conduct did not "qualify" under one of the subsections of the statute.

Even if *Brandon* is relevant, the Anti-Riot Act is not like the bank fraud statute analyzed in *Brandon* – setting out discrete alternate conduct constituting an offense. The panel opinion construed the Anti-Riot Act as having "four essential elements of a violation": (1) travel in or use of interstate commerce; (2) with intent (to incite, organize, promote, encourage, participate in, or carry on, or commit any act of violence in furtherance); (3) "a riot"; and (4) performance or attempted performance of an overt act towards any of the foregoing purposes.

In striking "promote" and "encourage", as well as striking part of the statutory definition of "incite," "organize," "participate in" and "carry on a riot," this Court dramatically changed two elements of the law – both the intent element, and the

actual or attempted overt act element.  While the panel opinion focuses on admissions

regarding violent conduct in the statement of facts, the Appellants pled guilty to

*conspiring* to commit the Anti-Riot Act.  Nothing in the Statements of Offense

demonstrates conclusively that the Appellants formed an agreement to violate the law

as redlined by the panel.

<u>CONCLUSION</u>

For these reasons, this motion for panel rehearing, or in the alternative

rehearing *en banc*, should be granted.

Respectfully submitted this 21st day of September 2020.

JUVAL O. SCOTT
Federal Public Defender
for the Western District of Virginia

 /s/ Lisa M. Lorish
LISA MARIE LORISH
Va. Bar No. 81465
Assistant Federal Public Defender
401 E. Market Street, Suite 106
Charlottesville, VA  22902
(434) 220-3380

*Counsel for Appellant Daley*

 /s/ Raymond C. Tarlton
RAYMOND C. TARLTON
TARLTON | POLK PLLC
3905 Haworth Drive, Suite 207 (27609)
PO Box 1386 (27602)
Raleigh, NC

14

(919) 948-6464

*Counsel for Appellant Miselis*

15

## <u>CERTIFICATE OF COMPLIANCE</u>

1. The brief of the appellant has been prepared using Microsoft Office 365 software, Garamond font, 14 point proportional type size.

2. EXCLUSIVE of the table of contents, table of authorities, statement with respect to oral argument, any addendums, and the certificate of service, this brief contains 3522 words and is therefore compliant with Fed. R. App. Pr. 40(b)(1).

I understand that a material misrepresentation can result in the Court's striking the brief and imposing sanctions.  If the Court so requests, I will provide an electronic version of the brief and/or a copy of the word or line print-out.

9/21/2020 _____              /s/ Lisa M. Lorish

Date                            Lisa M. Lorish

                                Assistant Federal Public Defender

## **CERTIFICATE OF SERVICE**

This is to certify that this Reply Brief of Appellant was electronically filed, and that true and correct copies were sent by first-class, postage-prepaid mail to:

Laura Rottenborn

Assistant United States Attorney

P.O. Box 1709

Roanoke, VA 24008

on this 21st day of September, 2020

/s/ Lisa M. Lorish

Lisa M. Lorish

Assistant Federal Public Defender